UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ONTEL PRODUCTS CORPORATION,             :

                       Plaintiff,    :    **REPORT AND RECOMMENDATION**

     -against-                                         :    **TO THE HONORABLE JOHN G. KOELTL**[*]

AMICO INTERNATIONAL CORP.               :
and AMICO POWER CORPORATION,           07 Civ. 7356 (JGK)(FM)
                                                              :
                       Defendants.
-----------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.    Introduction

       In this action, plaintiff Ontel Products Corporation ("Ontel") alleges that defendants Amico International Corp. and Amico Power Corporation (together, "Amico") unlawfully sold counterfeit versions of Ontel's trademarked "Swivel Sweeper" floor and carpet sweepers using Ontel's copyrighted product packaging and instruction manual.

       Amico failed to respond to either the complaint or Your Honor's order to show cause why a default judgment should not be entered. (See Docket No. 7). Accordingly, by order dated February 29, 2008, Your Honor held that Ontel was entitled to a default judgment and referred the matter to me for an inquest. (See Docket Nos. 8-9). By order dated March 18, 2008, I directed Ontel to serve and file its inquest papers by

---

[*]    This Report and Recommendation was prepared with the assistance of Surabhi Saraswat, a student at Brooklyn Law School.

May 20, 2008, and that Amico respond by June 3, 2008. (Docket No. 10). Although Ontel timely complied, Amico did not submit any papers.[2] (Docket No. 11).

As set forth below, I recommend that Ontel be awarded judgment against the defendants in the amount of $500,350, consisting of $500,000 in statutory damages and $350 in costs. I further recommend that Ontel's application for attorney's fees be denied.

## II.   Standard of Review

In light of Amico's default, Ontel's well-pleaded allegations concerning issues other than damages must be accepted as true. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages, see Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency,

---

[2] Ontel's original motion did not include an affidavit of service. After my Chambers inquired about this defect, an affidavit reflecting Ontel's original timely service of its inquest papers was filed on July 21, 2008. (See Docket No. 12).

Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). As set forth below, in this case both requirements have been met.

III.    Facts

Ontel's complaint and inquest papers establish as follows:

Ontel markets consumer products through various means, including the internet. (Compl. ¶ 9). One such product is the "Swivel Sweeper" floor and carpet sweeper ("Product"). (Id. ¶ 10). Ontel had trademarked the Product and copyrighted the accompanying packaging and user manual. (Id. ¶ 1). The federal trademark registration was issued on May 1, 2007, and claims a first use of July 5, 2004; the federal copyright was registered on July 12, 2005. (Id. ¶¶ 14-15).

Through its own investigation, Ontel learned that Amico was selling an inferior version of its Product at trade fairs and through a website. (See Decl. of Jason Drangel, Esq., dated May 13, 2008 ("Drangel Decl."), ¶ 4 & Ex. 3). On May 7, 2007, Ontel purchased a floor and carpet sweeper from Amico through eBay and determined that it was a counterfeit version of its product. (Id. ¶ 4). The counterfeit sweeper was identical to Ontel's Product and the accompanying product packaging and user manual were nearly identical to those for which Ontel holds a copyright. (Compl. ¶ 17 & Exs. 1-2).

Following this purchase, on May 9, 2007, Ontel's counsel, Venable LLP, sent a cease and desist letter by email to Amy Jiang ("Jiang"), Amico's president. (Drangel Decl. Ex. 1). That same day, Jiang sent to Ontel a letter in which she falsely

claimed that Amico had purchased only two samples of the infringing product and had removed it from its trade fair booth and website. (Id. Ex. 3).

Later the same month, Ontel determined that the infringing sweeper was being sold by The Man Store, a Texas distributor, which informed Ontel that Amico was its source. The Man Store agreed to return the infringing goods to Amico and furnished Ontel with documentation confirming its purchase of a total of 492 Swivel Sweepers from Amico at a unit price of $13.15. (Id. Ex. 6).

On May 16, 2007, Epstein, Drangel, Bazerman & James LLP, Ontel's present counsel, sent Amico a second cease and desist letter. (Id. Ex. 2). After receiving this second warning, Jiang furnished Ontel with an invoice reflecting the sale of 108 sweepers to The Man Store. Jiang also indicated that two other buyers had purchased 84 additional sweepers through transactions for which invoices were unavailable. (Id. Ex. 5). Although Jiang suggested that she had disclosed the full extent of Amico's involvement with the Product, (see id.), on August 1, 2007, Ontel was able to purchase yet another infringing Swivel Sweeper from Amico through eBay. (Id. ¶ 12). Ontel commenced this action shortly thereafter. (See Docket No. 1).

IV.     Discussion

    A.     Lanham Act

Under the Lanham Act, a trademark owner may choose to recover statutory damages rather than actual damages in cases of infringement. 15 U.S.C. § 1117(c); Gucci Am., Inc. v. MyReplicaHandbag.com, No. 07 Civ. 2438 (JGK)(DFE), 2008 WL 512789, at *2 (S.D.N.Y. Feb. 26, 2008). Here, Ontel has elected to recover statutory damages. (See Pl.'s Mem. at 2). Such damages may be awarded in the amount of:

> (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). "The statute does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (quoting Louis Vuitton Malletier v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002)) (internal quotation marks and citation omitted).

In the absence of any guidelines for determining the appropriate award in a case involving a willful trademark violation, courts have looked for guidance to the better-developed case law regarding an analogous provision of the Copyright Act of 1976 ("Copyright Act"), 17 U.S.C. § 504(c), which permits an award of statutory damages for

5

willful copyright infringement.  See, e.g., Pitbull Prods., Inc. v. Universal Netmedia, Inc., No. 07 Civ. 1784 (RMB)(GWG), 2007 WL 3287368, at *3 (S.D.N.Y. Nov. 7, 2007); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003); Guess?, Inc. v. Gold Ctr. Jewelry, 997 F. Supp. 409, 411 (S.D.N.Y. 1998).  In copyright cases, courts consider such factors as

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Luban, 282 F. Supp. 2d at 125 (quoting Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir. 1986)) (internal quotation marks omitted).

In this case, because Amico has failed to respond, the Court has no information concerning the profits it reaped, and Ontel cannot estimate with any degree of certainty the revenues it has lost.  Ontel also has failed to provide any detailed information concerning the value of its trademark.  Ontel's complaint nevertheless alleges that Ontel distributes its Product through such retail outlets as Home Depot and Target and that it has sold nearly eight million units since 2004.  (Compl. ¶¶ 11-12).  Given this degree of success, the Court can reasonably infer that Ontel's trademark for the Product is valuable. Moreover, each of the remaining Fitzergerald Publishing factors augurs in favor of a large

award to Ontel to discourage Amico and other infringers from future acts of willful infringement.

That said, the question remains, where in the range from $500 to $1,000,000 should the Court's award of statutory trademark damages lie? In Pitbull Products, 2007 WL 3287368, at *2, the plaintiff marketed a trademarked line of adult products, including videotapes. As here, the defendant defaulted and provided no information to the court in connection with the inquest. Although the plaintiff sought to recover $1,000,000 per infringed mark, Magistrate Judge Gorenstein recommended an award of $250,000 per mark because the plaintiff had failed to provide "any rationale" for an award of the statutory maximum. Id. at *4; see also Ermenegildo Zegna Corp. v. 56th St. Menswear, Inc., No. 06 Civ. 7827 (HB)(GWG), 2008 WL 2567791, at *4 (S.D.N.Y. June 26, 2008) (awarding $200,000 per infringed mark); Rodgers v. Andersen, No. 04 Civ. 1149 (RJH)(AJP), 2005 WL 950021, at *3 (S.D.N.Y. Apr. 26, 2005) ($250,000); Silhouette Int'l Schmied AG v. Vachik Chakhbazian, No. 04 Civ.3613 (RJH)(AJP), 2004 WL 2211660, at *2 (S.D.N.Y. Oct. 4, 2004) (same).

In each of the cases cited, the plaintiff sought money damages only for trademark infringement. Here, by comparison, Ontel also seeks statutory damages for copyright infringement. It therefore is appropriate to consider the law applicable to willful copyright infringements before discussing the total amount of damages Ontel should be awarded.

B.  Copyright Act

Under the Copyright Act, an infringer of a copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer or (2) statutory damages.  17 U.S.C. § 504(a); Brown v. Party Poopers, Inc., No. 00 Civ. 4799 (JSM)(DFE), 2001 WL 1380536, at *4 (S.D.N.Y. July 9, 2001).  Where, as here, the plaintiff seeks statutory damages, they may be awarded:

> for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1).  If the infringement was willful, the court may increase the award of statutory damages to a maximum of $150,000.[3]  Id. § 504(c)(2).

Within these statutory limits, courts have broad discretion in awarding statutory damages.  Fitzgerald Publ'g Co., 807 F.2d at 1116.  Indeed, judges may award statutory damages in amounts that "greatly exceed the actual damages shown" to compensate copyright owners for past infringement and deter future infringement.  Stevens v. Aeonian Press, Inc., No. 00 Civ. 6330 (JSM), 2002 WL 31387224, at *2 (S.D.N.Y. Oct. 23, 2002); see Entral Group Int'l, LLC v. Honey Café on 5th, Inc., No. 05 Civ. 2290 (NGG)(MDG), 2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006) (awarding

---

[3]  If the infringer "was not aware and had no reason to believe that" its "acts constituted an infringement" the court, in its discretion, may "reduce the award of statutory damages to a sum of not less than $200."  17 U.S.C. § 504(c)(2).

$150,000 for defendants' willful infringement of fourteen works although neither the plaintiff's losses nor the defendants' profits were established); Peer Int'l Corp. v. Max Music & Entm't, Inc., No. 03 Civ. 996 (KMW)(DF), 2004 WL 1542253, at *5 (S.D.N.Y. July 9, 2004) (awarding $900,000 for defendant's willful infringement of thirty copyrights despite plaintiff's inability to show actual damages).

C. Damages

In its papers, Ontel apparently seeks an award of $2,000,000 in statutory damages. (See Pl.'s Mem. at 5). This, of course, is greater than the $1,150,000 maximum award that the trademark and copyright statutes together authorize in a case involving the willful infringement of only one trademark and one copyright. In its papers, Ontel fails to provide any justification for its request, other than to say it is "appropriate and necessary where factoring the blatant willfulness of [Amico's] infringement." (Id.).

Ontel also fails to consider whether an award of statutory damages under both the Lanham and Copyright Acts would constitute a double recovery. Some courts have reached that conclusion. See Murray v. Shaw Indus., Inc., 990 F. Supp. 46, 47 (D. Mass. 1997) (declining to award damages based on the infringer's profits under both statutes); Mfrs. Techs., Inc. v. Cams, Inc., 728 F. Supp. 75, 85 (D. Conn. 1989) (declining to award actual damages under both statutes). Other courts have found that there is no double recovery – at least when the plaintiff seeks statutory damages under the Copyright Act and disgorgement of the infringer's ill-gotten profits under the Lanham Act. See, e.g.,

Nintendo of Am., Inc. v. Dragon Pac. Int'l, 40 F.3d 1007, 1010-11 (9th Cir. 1994) (affirming award of $186,000 under both Acts); Viacom Int'l Inc. v. Fanzine Int'l, Inc., No. 98 Civ. 7448 (RCC), 2001 WL 930248, at *5-7 (S.D.N.Y. Aug. 16, 2001) (awarding $500,000 in statutory damages under the Copyright Act and disgorgement of $124,033 in profits under the Lanham Act); Lyons P'ship, L.P. v. AAA Entm't Inc., No. 98 Civ. 475 (DAB)(MHD), 1999 WL 1095608, at *8-11 (S.D.N.Y. Dec. 3, 1999) (awarding $88,625 under both statutes for willful infringement of plaintiff's trademark and copyright). Although the Second Circuit has yet to address this issue, in at least one instance a district court in this Circuit has found that there is no double recovery when the plaintiff seeks statutory damages under both the Copyright and Lanham Acts.  See Microsoft Corp. v. Black Cat Computer Wholesale, Inc., 269 F. Supp. 2d 118, 122-23 (W.D.N.Y. 2002) (relying on Nintendo).

   There is no need to determine whether statutory damages can be awarded under both statutes in this case because the statutory damage limit under the Lanham Act alone provides ample room for a suitable award.  Indeed, it seems clear that Amico's customers ordered its infringing sweepers because they thought they were buying Ontel's trademarked Product, not because they were swayed by the specific text printed on the packaging or the owner's manual.  At heart, therefore, this is a trademark case.

   To say that Amico's trademark infringement here was willful would be an understatement.  On two occasions, when Amico was confronted with evidence of its

infringing acts, its president gave Ontel false information in an effort to avoid revealing the full scope of its activities. It has continued this path of obstruction by refusing to participate in this lawsuit. As a consequence, Ontel has been stymied in its efforts to establish the full extent of Amico's profits or Ontel's losses. Nevertheless, the considerable success of Ontel's Swivel Sweeper combined with Amico's unwillingness to provide accurate information about its own sales of its infringing product suggests that Amico's sales may well have been extensive.

In these circumstances, I recommend that Ontel be awarded statutory damages in the amount of $500,000. Inasmuch as this sum is half the maximum award under the Lanham Act alone, there is no need to apportion the award between the two statutes under which Ontel seeks relief.

D.      Costs and Attorney's Fees

The Lanham Act provides that a prevailing party may recover "the costs of the action" and "in exceptional cases" its "reasonable" attorney fees. 15 U.S.C. § 1117(a). The Copyright Act similarly provides that the court may award a prevailing party "full costs" and a "reasonable attorney's fee" (without limiting the fee to exceptional cases). 17 U.S.C. § 505. Under both statutes, the costs that a party may recover include such items as the expense of deposition and trial transcripts, fees for process service, and witness fees. See 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1); Local Civ. R. 54.1.

In this Circuit, a party seeking an award of attorney's fees must support its request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done."  N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  Fee applications that do not contain such supporting data "should normally be disallowed."  Id. at 1154; see Ermenegildo Zegna Corp., 2008 WL 2567791, at *4 (denying attorney's fees, despite detailed time records, because the "application contains no indication that the law firm's statement was based on a compilation of contemporaneous time records"); Pitbull Prods., 2007 WL 3287368, at *4 (denying attorney's fees for failure to produce "contemporaneous time records, let alone any affidavit authenticating those records").

In its papers, Ontel alleges that it incurred attorney's fees in the amount of $8,536, plus an additional $1,100 in costs for "filing the complaint, service of the complaint and investigator services."  (Drangel Decl. ¶ 14).  Although the amount of attorney's fees is relatively modest, Ontel has failed to provide the Court with any documentation to support this aspect of its claim.  Accordingly, the Court cannot determine the reasonableness of Ontel's attorney's fees.  Similarly, even if it were a recoverable cost, Ontel has provided the Court with no information concerning the services provided by its investigator or process server or the rates they charged.  These aspects of Ontel's claim therefore must be disallowed.

Nevertheless, the Court can take judicial notice that Ontel had to pay a filing fee of $350 to commence this action. See 28 U.S.C. § 1914(a). This amount therefore is recoverable. See Local Civ. R. 54.1(c)(10).

V.     Conclusion

For the reasons set forth above, Ontel should be awarded judgment against the defendants in the amount of $500,350, consisting of $500,000 in statutory damages and $350 in costs.

VI.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl and to my chambers at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Koeltl. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985);

Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).

Dated:    New York, New York
          August 19, 2008

                                                    /s/ Frank Maas
                                              _____
                                                    FRANK MAAS
                                              United States Magistrate Judge


Copies to:

Jason M. Drangel, Esq.
Epstein, Drangel, Bazerman & James, LLP
60 East 42nd Street, Suite 820
New York, New York 10165
Fax: (212) 292-5391

Amico Power Corp.
4825 Gregg Road
Pico Rivera, California 90660

Amico International Corp.
4821 Gregg Road
Pico Rivera, California 90660